No. 85,191

In the Matter of the Marriage of JANEE MARIE COMLEY, f/k/a JANEE MARIE PHILLIPS, *Appellee,* and BILL RAY PHILLIPS, *Respondent.* TRIPLETT, WOOLF & GARRETSON, LLC, *Appellant.*

(32 P.3d 1128)

Opinion filed October 19, 2001.

*James A. Walker,* of Triplett, Woolf & Garretson, LLC, of Wichita, argued the cause and was on the briefs for appellant.

*John T. Conlee,* of Foulston Conlee Schmidt & Emerson, LLP, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: Appellant Triplett, Woolf & Garretson, LLC (TW&G) served as appellee Janee Marie Comley's attorneys of record during her divorce action against respondent Bill Ray Phillips. Here, TW&G appeals the order of the district court filed April 7, 2000. In that order, the district court held that TW&G's attorney's lien did not attach to monies paid into the court by a nonparty pursuant to a spousal maintenance order. TW&G filed a timely appeal pursuant to K.S.A. 60-2102(a)(4). The matter is before this court pursuant to a K.S.A. 20-3018(c) transfer.

On October 5, 1998, Comley entered into a representation agreement with TW&G, with James A. Walker as the primary attorney responsible for the representation. Walker's rate of compensation was set at $200 per hour, plus expenses. The agreement specifically stated:

"I understand that due to the pendency of this action and your loss of your job you will be looking for an Order of the Court or a liquidation of marital assets in order to satisfy the attorney's fees and expenses in this matter. You also understand that in a matter such as this where your cash flow does not permit you to remain current on our billing, it may be necessary for us to file an attorney's lien or some other process in order to protect our interests with respect to being paid for our services."

Comley does not argue that the agreement was improper or that the amount of fees charged by TW&G was excessive.

After considerable litigation and a prolonged trial, the district court awarded Comley a cash property settlement of $550,429 and 6 years of spousal maintenance at $5,000 per month, beginning November 1, 1999. The journal entry of judgment and decree of divorce also granted TW&G judgment against Phillips in the amount of $84,627 for unpaid attorney fees and expenses.

At the commencement of the divorce action, Phillips owned 73.7% of Mid-America Auto Auction (MAA). The court awarded 50% of that business interest to Comley. Phillips had entered into a severance agreement with MAA to compensate him for past services rendered. Following the divorce trial, the court issued an income withholding order requiring MAA to pay the $5,000 per

month it owed to Phillips to the clerk of the district court for the monthly spousal maintenance payment.

On December 10, 1999, TW&G withdrew as counsel for Comley. John E. Foulston of Foulston Conlee Schmidt & Emerson, LLP, entered his appearance as attorney of record for Comley.

On November 15, 1999, TW&G filed an attorney's lien and served it upon MAA seeking to attach a portion of the $5,000 payment to the clerk of the district court. Without disputing the amount of TW&G's fees, Comley contested the application of the lien to the spousal support payments.

On January 7, 2000, a hearing was conducted before the Honorable Rebecca L. Pilshaw. During oral argument, Comley's new counsel reviewed the history of monies directed to TW&G, noting that during the pendency of the divorce, funds from the sale of real property were put into escrow and from that account more than $125,000 in attorney fees was paid to TW&G. In addition to that amount, TW&G was to receive another $84,627 for attorney fees and expenses. Although Comley was awarded judgment for $550,429 from property division, no payment on that judgment had been made by Phillips. Comley's attorney stated that except for the spousal maintenance money, Comley was "without any other source of funds on which to live." Comley's attorney argued that TW&G should not be able to enforce its lien (1) because public policy dictated that support or maintenance in any form should not be subject to a lien and (2) because the attorney's lien statute did not provide for a charging lien on monies coming to the court from a third party rather than from the adverse party. Further, Comley's attorney argued that a statutory lien was an extraordinary remedy given by the law and, as such, must be strictly construed.

In contrast, TW&G argued that spousal maintenance should not enjoy hallowed status. In addition, TW&G contended that during the trial Comley told the court that one of the reasons she needed $5,000 per month in spousal support was due to her outstanding bills, including TW&G's bill for attorney fees. Further, TW&G characterized K.S.A. 7-109 as not distinguishing between sources of the monies coming to the clerk of the court. Therefore, TW&G

argued that "this alimony obviously is a judgment . . . and we are claiming a lien on those amounts."

The district court held that TW&G's lien did not attach to monies paid by MAA directly to the clerk of the district court pursuant to the income withholding order "since these funds do not constitute 'money due to the client and in the hands of the adverse party' as required by K.S.A. 7-108." As an additional ground for its decision, the court held that TW&G's lien did not attach "to any funds which are due to [Comley], from any source, which are in payment of [Phillip's] obligation to pay spousal maintenance since to allow a lien to attach to such monies would violate the public policy of the State of Kansas."

On appeal, TW&G challenges both bases for the district court's decision. Comley contests the jurisdiction of this court under K.S.A. 60-2102(a)(4) because of pending posttrial motions filed by Phillips. Comley also seeks affirmance of the holding of the district court as a correct interpretation of public policy and K.S.A. 7-108.

The reasons cited by the district court for denying TW&G's lien were that the monies sought to be attached were not "in the hands of the adverse party," as required by K.S.A. 7-108 and that attachment of spousal support in this circumstance would violate public policy. TW&G filed its attorney's lien under the authority of K.S.A. 7-108 and 7-109. Therefore, the district court's interpretation of these statutes is at issue.

"Interpretation of a statute is a question of law in which appellate review is unlimited." *Kansas Dept. of SRS v. Paillet*, 270 Kan. 646, Syl. ¶ 3, 16 P.3d 962 (2001). "Legislative intent is to be determined from a general consideration of an entire act. To the extent possible, the court should attempt to reconcile different provisions so as to make them consistent, harmonious, and sensible. It is presumed that the legislature intended that its enactments are to be given a reasonable construction, so as to avoid unreasonable results." *Carlson v. Ferguson*, 270 Kan. 576, Syl. ¶ 1, 17 P.3d 333 (2001).

K.S.A. 7-108 authorizes the entry of attorney's liens for unpaid compensation due from clients. The statute states:

"An attorney has a lien for a general balance of compensation upon any papers of his or her client which have come into the attorney's possession in the course of his or her professional employment, upon money in the attorney's hands belonging to the client, and upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party."

K.S.A. 7-109 deals with the amount of an attorney's lien and allows the court to determine the amount due on the lien and make an order for distribution of monies after a judgment has been collected or deposited with the clerk of the court. That statute states, in pertinent part:

"Where any judgment has or may be collected or paid to the clerk of any court rendering the same, on execution or otherwise, upon which an attorney's lien is claimed, the court in which such judgment was or is rendered may in term-time, or the judge of said court at chambers, without formal pleadings, on application of any party interested, determine the amount due on said attorney's lien, if any, and make an order for the distribution of said moneys according to the respective rights of the parties. Upon receipt of such order, the clerk shall make such distribution."

One further statute that bears on the issue before us is K.S.A. 2000 Supp. 60-2308(e), which reads:

"Money held by the state department of social and rehabilitation services, any clerk of a district court or a district court trustee in connection with a court order for the support of any person, whether it be identified as child support, spousal support, alimony or maintenance, shall be exempt from execution, attachment or garnishment process."

TW&G argues that the case of *In re Marriage of Wageman*, 25 Kan. App. 2d 682, 968 P.2d 1114 (1998), supports the proposition "that attorney's liens can be enforced against awards of support." In *Wageman*, the Court of Appeals reviewed both K.S.A. 7-108 and 60-2308(e).

In *Wageman*, the client hired an attorney to represent her in an action to collect past due child support and to modify monthly child support payments. The attorney claimed that the client agreed to pay attorney's fees out of the monies recovered. When the parties eventually settled their dispute for the lump sum of $17,148.19, the balance due to the attorney was $4,521. At the client's request, the district court reviewed the attorney's fees, found them to be

reasonable, and entered an order to pay the lien out of monies received from the settlement of a claim for unpaid child support. After the attorney notified Wageman that he had received the settlement check, the client arranged to stop payment on the check and a new check reissued payable only to the district court.

TW&G points to the language of the Court of Appeals from *Wageman*: "We find that in an action for recovery of an arrearage of support, the attorney for the claimant is entitled to an attorney's lien against the amount of settlement of judgment for fees incurred in obtaining the settlement or judgment." 25 Kan. App. 2d at 686. Significantly, however, TW&G ignores specific language in *Wageman* concerning the statutory exemption provided by K.S.A. 60-2308(e):

"Under the facts of this case, we hold K.S.A. 60-2308(e) does not apply for the reason that the money is a settlement of a disputed claim. . . . Again, that is not applicable as we are dealing with a lump sum recovery of disputed past due child support, not money used to pay current child support." 25 Kan. App. 2d at 684.

Here, K.S.A. 2000 Supp. 60-2308(e) bears more directly on the issue before this court because the monies in question are being used to pay current spousal support.

In addition, TW&G cites *Grayson v. Grayson*, 182 Kan. 285, 320 P.2d 803 (1958), and *Costigan v. Stewart*, 76 Kan. 353, 91 Pac. 83 (1907), in support of its argument that an attorney is entitled to a lien upon support funds. In *Grayson*, this court quoted *Costigan* and held that "[a]n attorney who is employed by the mother of an illegitimate child to assist in the prosecution of bastardy proceedings, under a contract by which he is to be paid an attorney's fee out of the fund recovered, is entitled to a lien upon such fund for his fees." 182 Kan. at 287.

However, *Costigan* was published in 1907 and *Grayson* in 1958. K.S.A. 60-2308 was not enacted by the legislature until 1963. See L. 1963, ch. 303. Because the statute is later in time, *Costigan* and *Grayson* do not control the outcome of this case.

In addition, both Comley and TW&G look for support in cases from other jurisdictions that are reviewed in an annotation by Garrison, *Alimony or Child Support Awards as Subject to Attorneys'*

*Liens*, 49 A.L.R.5th 595. That annotation reveals that in general, charging liens have not been held enforceable against periodic spousal support awards, but may be enforced against lump sum awards.

Although the language of K.S.A. 7-108 does not distinguish between categories of "money due to the client," K.S.A. 2000 Supp. 60-2308(e) does. It exempts from execution, attachment, or garnishment any "[m]oney held by . . . any clerk of a district court . . . in connection with a court order for the support of any person, whether it be identified as child support, spousal support, alimony or maintenance . . . ." K.S.A. 2000 Supp. 60-2308(e).

The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998). Legislative intent may best be determined from the plain meaning of the words used in the statute in light of all the experience available to the lawmaking body. *Hulme v. Woleslagel*, 208 Kan. 385, 391, 493 P.2d 541 (1972). In this case, the spousal support monies in question clearly fall within the category contemplated by this exemption statute. Under the plain meaning of K.S.A. 2000 Supp. 60-2308(e), the periodic spousal support payments made to the clerk of the court are exempt from the lien of TW&G.

For the reasons outlined above, we find that the district court correctly held that TW&G could not apply its attorney's lien to the monies in the hands of the clerk of the district court in connection with the monthly spousal support payments.

Affirmed.

DAVIS, J., not participating.

DAVID S. KNUDSON, J., assigned.